**GARY SCHOER**

ATTORNEY AT LAW

NORTH SHORE ATRIUM

6800 JERICHO TURNPIKE, SUITE 108W

SYOSSET, NEW YORK 11791

(516) 496-3500

FAX (516) 496-3530

EMAIL: GSchoer@aol.com

July 30, 2012

**VIA ECF & UPS OVERNIGHT**
Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: UNITED STATES. v. JERRY BALZANO
Docket # 11 CR 32 (KAM)

Dear Honorable Madam:

Pursuant to Federal Rule 32 and the Local Rules of this Court, please accept this letter on behalf of Jerry Balzano in response to, and as Objections to, the Pre-Sentence Report (PSR), as well as in support of his position relating to his impending sentence scheduled for August 29, 2012.

**Factual Objections Relating to
Advisory Guideline Offense Conduct**

Annexed hereto as Exhibit "A" is a copy of a letter sent to Victoria Aguilar, United States Probation Officer setting forth the objections of Mr. Balzano to the PSR. Upon information and belief the Government has not formally responded to that letter. I have received from the Probation Department a PSR Addendum dated February 28, 2012 addressing the issues raised.

Notwithstanding the Probation Department's position with respect to the objection to Paragraphs 6 through 12 of

1

the PSR and the PSR Addendum, Mr. Balzano seeks to strike these paragraphs from the report. The prejudice of the use of the term "La Cosa Nostra" in Mr. Balzano's PSR, as well as the repetitive reference to acts of violence, including murder, and the negative impact those terms may have on his place of incarceration and the programs for which he may be eligible, should this Court determine that incarceration is appropriate, and/or his supervision, is obvious. These paragraphs are totally unnecessary to your Honor's sentencing determination in Mr. Balzano's case and, therefore, should be stricken from the PSR. Mr. Balzano respectfully submits that it suffices for all sentencing purposes that the PSR reflect merely that Mr. Balzano was associate of a criminal enterprise known as the Decavalcante Crime Family and that he committed the acts set forth in Racketeering Acts 2 and 3 in furtherance of the conduct of that criminal enterprise.

With respect to paragraph 23 of the PSR, annexed hereto as Exhibit "B" is a copy of a letter from Mr. Balzano's Aunt concerning the circumstances surrounding the extension of credit (loan) that forms the basis for his guilty plea to the Extortion Conspiracy, as well as a copy of the bank statement for the underlying loan taken by Mr. Balzano's Aunt and Uncle. It is clear that Mr. Balzano's Aunt and Uncle extended credit to his Uncle's cousin by accessing $35,000.00 from a home equity line of credit that they had with Bank of America. The money borrowed was at a prevailing bank variable rate, not some exorbitant "loan sharking" rate. The cousin promised to repay the money borrowed directly to the bank within a year paying no additional interest or consideration or "vig" to Mr. Balzano's Aunt and Uncle or to anyone else. While the cousin, after moving to North Carolina, made minimal payments to the bank for a period of time, he did not, as promised, pay the loan off within a year. At some point, he advised Mr. Balzano's Uncle that he no longer could or would be able to pay the loan off within that period. This decision impacted upon the credit of Mr. Balzano's Aunt and Uncle and they were, naturally, upset about the situation. As a result his Aunt asked Mr. Balzano to speak to the cousin. He tried, but was unsuccessful. Thereafter, he did, in fact, discuss with a Government confidential informant, and others, using a show of force and using, if needed, threats against the cousin to have him immediately repay the bank loan. However, contrary to paragraph 23 of the PSR, Mr. Balanzo never said to any of these individuals that the debt he was attempting to have paid on behalf of his Aunt and Uncle was a "loan-sharking debt". While these

2

discussions form the basis of the Conspiracy to Extort to which Mr. Balzano entered a plea of guilty, the details regarding specific attempts to collect this money are unknown to the Government (PSR paragraph 23) because, in fact, and most importantly, no such attempts were ever made. (See also paragraph 26 of the PSR).

Respectfully, based upon the above facts, contrary to the findings of the PSR, Guideline §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) is, rather than as utilized in the PSR, Guideline §2E2.1 (Making or Financing an Extortionate Extension of Credit; collecting and Extension of Credit by Extortionate Means), more appropriate for use in the instant case. [1] Guideline §2E2.1 "refers to offenses involving the making or financing of extortionate extensions of credit, or the collection of loans by extortionate means. These 'loan-sharking' offenses typically involve threats of violence and provide economic support for organized crime. The base offense level for these offenses is higher that the offense level for extortion because loan sharking is in most cases a continuing activity" (Commentary, Background §2E2.1). The loan herein did not involve the making or financing of any extortionate extension of credit in that it was a regular bank loan at "normal" prevailing rates. While the collection of the loan was discussed to be by extortionate, threatening, means, notwithstanding that such means of collection was discussed by members of organized crime, the loan did not provide economic support for organized crime, nor was the collection a continuing activity of the sort this Guideline section was designed to address. Clearly, Guideline §2B3.2 which involves extortion in the collection of non "loan-sharking" debts, a "pay or else" threat (See Commentary 2), is the appropriate Guideline Section that should be utilized in this case based upon all the facts and circumstances.

---

[1] The Defendant is aware that in the Plea Agreement (Exhibit "C") he reached and signed with the Government he stipulated to a Guidelines calculation based upon §2E3.1 (a) [sic] (Clearly intended to be §2E 2.1 (a)). At the time of the execution of that Agreement counsel was not fully aware of the facts relating to the Conspiracy to Extort and did not, therefore, properly analyze the subtleties of the Guideline application, nor properly advise the Defendant. The Defendant should not be punished as a result of the incomplete analysis and miscalculations of counsel.

3

## Advisory Guideline Offense Level Calculation

Based upon the above, the guideline calculation analysis in the PSR should be revised as follows:[2]

## Offense Level Computation

PSR paragraph :   Base Offense Level: The Guideline for this 18 U.S.C. 1962(d) offense is Guideline §2E1.1(a). Since the base offense level for the underlying racketeering activity should be 18 per Guideline §2B3.2, pursuant to §2E1.1(a) the base offense level for Count One, Racketeering Act 3, Sub-Act A should be

**19**

PSR paragraph 55: Adjusted Offense Level (Subtotal): should, thus, be

**19**

## Multiple - Count Adjustment

PSR paragraph 66: Greater of Adjusted Offense Levels Above

**19**

PSR paragraph 70: Total Offense Level: should, therefore, be

**16**

Moreover, Mr. Balzano, with the Government's agreement, urges the Court to adopt a two level reduction of the Total Offense Level in light of the global plea disposition, resulting in a final offense level of

**14**

## Factual Considerations Relating To
## Criminal History

With respect to the offense set forth in Paragraphs 76 and 77 of the PSR, the case involved an automobile stop of Mr. Balzano's vehicle at which two "roaches" of marijuana and clips used to smoke those "roaches" were recovered from his ash tray. He received a ticket/summons to appear in Court on this matter, but he did not comply. When he was arrested on October 8, 2005 for the crime set forth in

---

[2] PSR paragraph 32 based upon the instant analysis should be revised to reflect a base level of 19 per Guideline §2E1.1(a)(1).

4

Paragraph 78 of the PSR, he was advised that he could not be released on bail unless he plead guilty to this offense and paid a fine of $675 that had been assessed for the May 16, 2002 ticket/summons (as well as the fine that had been assessed for the matter set forth in Paragraph 74 of the PSR). Having been in jail for several months on the new arrest he entered the plea to this minor offense and paid the fine.

### Factual Considerations Relating To Offender Characteristics

### Family Ties, Family Responsibilities and Communities

Mr. Balzano annexes hereto as Exhibit "D" letters from his wife, daughter, sister and two cousins. Consistent with the PSR each extols him as a key member of a close knit family, as well as a loving, caring, devoted and selfless individual.

### Mental and Emotional Health

PSR paragraph 90 - in addition to that set forth in the PSR, since the time of the preparation of that report, Mr. Balzano has become much more anxious and more severely depressed.

### Physical Condition

PSR paragraph 91 - the arthritis and muscle weakness mentioned in the PSR are manifested in lower back and knee pain for which Vicodin is prescribed to Mr. Balzano. At his most recent Doctor's examination he was informed that his liver has become more enlarged as a result of his Hepatitis C and its treatment.

### Substance Abuse

PSR paragraph 92 - unfortunately, as a result of his ever growing anxiousness and depression, as well as his increased physical pain, Mr. Balzano has, since the preparation of the PSR, on occasion, reverted to the use of marijuana.

## Advisory Guideline Sentencing Options

PSR paragraph 106: Advisory Guideline Provisions: Upon the above, based upon a total offense level of 16 and a Criminal History Category of III the advisory guideline imprisonment range should be 27 to 33 months. Should the Court grant the reduction for the Global Plea, a total offense level of 14 would yield an imprisonment range of 21 to 27 months.

## Non Guideline Considerations

The Supreme Court in its decisions in <u>Gall v. United States</u>, 552 U.S. 38 (2007) and <u>Kimbrough v. United States</u>, 552 U.S.85 (2007) made it clear that extraordinary circumstances are not required to justify a sentence by a District Court outside the advisory Guideline range determined and that only "some weight" need be given to that advisory Guideline range. Thus, this Court has great discretion in fashioning a sentence "sufficient, but not greater that necessary" pursuant to 18 U.S.C. § 3553(a).

The Second Circuit has noted that consideration of the § 3553(a) factors, unlike the Guidelines, permits a sentencing court to view each defendant independently and "make an individualized assessment of the sentence warranted by § 3553(a) based on the facts presented." <u>United States v. Jones,</u> 531 F.3d at 170 (internal quotations omitted). Consequently, it is also proper for sentencing courts to consider arguments that a "Guidelines sentence itself fails properly to reflect § 3553(a) considerations." Id at 172 (<u>quoting Rita</u>, 127 S.Ct. at 2465).

The Second Circuit has observed that assessing each defendant's individual situation "is not, after all, a precise science." Id. at 174. In <u>United States v. Fernandez.</u> 443 F.3d 19, 29 (2d Cir. 2006), the court similarly recognized that "[consideration of the § 3553(a) factors is not a cut-and-dried process of fact-finding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." As a result of the various considerations that enter into a sentencing decision, there is no such thing as a so-called right answer. Indeed, the court noted in <u>Jones</u>:

> Rarely, if ever, do the pertinent facts dictate one and only one appropriate sentence. Rather, the facts may

> frequently point in different directions
> so that even experienced district judges
> may reasonably differ, not only in their
> findings of fact, but in the relative
> weight they accord competing
> circumstances. Such reasonable
> differences necessarily mean that, in the
> great majority of cases, a range of
> sentences - frequently extending well
> beyond the narrow ranges prescribed by
> the Guidelines - must be considered
> reasonable.

In the instant case, pursuant to the factors to be considered as set forth in 18 U.S.C. § 3553(a), Mr. Balzano submits that this Court should consider, as most significant, his "history and character". Initially, Mr. Balzano submits that pursuant to Guideline §4A1.3(b), Criminal History Category III, as found in the PSR, over represents the seriousness of his past criminal conduct in light of the facts and circumstances of his prior conviction for Possession of Marijuana/Hash and Possession of Drug Paraphernalia arising out of the summons he received on May 16, 2002. This arrest was for a relatively small amount of marijuana found in his vehicle and the clips used to smoke the "roaches" found. Clearly, it is the nature of the prior offenses rather than simply the number that is more indicative of the seriousness, or lack thereof, of a Defendant's criminal record, see Guideline §4A1.3, Commentary 2(B). In the instant case, Mr. Balzano's prior conviction, as explained above, was non violent, involved no weapons or injuries and was in the nature of a petty offense. Moreover, the sentence received on that offense, a conditional discharge and relatively small fine, reflects the lack of seriousness involved, See e.g. United States v. Mishoe, 241 F.3d 214, 218 (2d Cir. 2001). "Using, as a reference, the criminal history category applicable to Defendants whose criminal history … most closely resembles that of the Defendant's", it is clear that Mr. Balzano's history is much less serious than others who normally fall within Criminal History Category III (In stark contrast to Mr. Balzano, a person in Criminal History Category III could be one who was convicted of two violent felonies for which sentences in excess of one year were imposed). Respectfully, it is submitted that the more appropriate Criminal History Category in the instant case would be Criminal History Category II in that Mr. Balzano's past is

more similar to others who have 2 or 3 Criminal History Points (rather than 4).

Additionally, considering the character of Mr. Balzano, it is clear from the PSR that he is beloved member of a close knit family, all of whom are extremely supportive of him with respect to his current circumstances. He is a loving husband and father who is always open to helping others. He is extremely remorseful with respect to the instant offense which it seems was committed because of his financial situation. It is clear that his current situation has had a severe impact upon him and has taught him a "substantial, lasting, life lesson."

Further, as recognized by the PSR (paragraph 117), Mr. Balzano's chronic Hepatitis C condition, as well as his other health issues and his demonstrated anxiety and significant depression, all are mitigating factors which your Honor should consider in determining the appropriate sentence in this case.

Similarly, addressing § 3553(a), the Court should consider, among other things, the effect the sentence will have upon "general deterrence," and prevention of further crimes, not just by Mr. Balzano, but by the public at-large. Studies have shown that there is no empirical relationship between the length of a sentence and specific or general deterrence. In all categories of criminal conduct, from white collar to drug offenses, the studies have shown that length of sentences increase, rather than decrease, the rate of recidivism. *See*, Lynn M. Vieraltis, *et al*, The Criminogenic Effects of Imprisonment: Evidence from State Panel Data, 1974-2002, 6 Criminology & Pub. Pol'y 589, 591-93, (2007); U.S. Sentencing Commission Staff Discussion Paper, Sentencing Options United the Guidelines 18-19 (Nov. 1996), available at http.www.ussc.gov/SIMPLE/sentopt.htm; Miles D. Harer, Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes? 7 Fed. Sent. Rep. 22 (1994). Herein, a below guideline sentence will not impact upon general or specific deterrence.

This Court should also consider in fashioning the appropriate sentence herein that Mr. Balzano has been confined to his home since his arrest, a period of more than 18 months.

Clearly, under all of the circumstances of this case, including the combination of all of the above mitigating factors, see e.g. United States v. Rioux, 97 F.3d 648 (2d

Cir. 1996), a non guideline sentence, herein, would reflect all of the facts and circumstances relating to the instant offense and Mr. Balzano as a person, would promote respect for the law and would provide a just (sufficient but not more than necessary) punishment.

Thus, Mr. Balzano respectfully requests that, upon all of the above, this Court, considering all of the relevant sentencing issues, facts and circumstances of this case, render a sentence fairly, justly and with compassion and mercy.

Thank you in advance for your consideration of this matter.

Respectfully submitted,

GARY SCHOER, ESQ.
*Attorney for Defendant*
6800 Jericho Turnpike, Suite 108W
Syosset, New York 11791
(516) 496-3500

TO: Allon Liftshitz, AUSA & Elizabeth Geddes, AUSA
(Via ECF)

Victoria M. Aguilar, U.S. Probation Officer
(Via UPS Overnight)

9